Jimmy **REED** and Cindy Reed,
Plaintiffs–Appellees,

v.

**SHELL OFFSHORE INC.,**
Defendant–Appellant.

No. 88–3144.

United States Court of Appeals,
Fifth Circuit.

May 15, 1989.

J. Daniel Picou, Bailey & Leininger, Metairie, La., for defendant-appellant.

Craig J. Robichaux, John W. Anthony, Talley, Anthony, Hughes & Knight, Bogalusa, La., for plaintiffs-appellees.

Before REAVLEY, WILLIAMS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Shell Offshore Inc. was found liable as the custodian of a defective thing, Louisiana Civil Code Art. 2317, after Jimmy Reed fell through a hole in a grated floor of an offshore platform. The issues are whether the hole, covered with a sheet of plywood, was dangerously defective; whether judgment should have been rendered for Shell because as a matter of law, the accident was caused by the fault of a third party; and whether the trial court should have asked the jury to apportion fault to plaintiff's employer and an independent contractor as well as Shell. Finding one aspect of the third issue to have merit, we must reverse and remand for new trial.

## I. BACKGROUND

Jimmy Reed arrived at Shell's platform on the outer continental shelf off the coast of Louisiana on July 21, 1985. He was the foreman for L & L Sandblasting, Inc., which had been hired by Shell to perform certain blasting and painting services on the platform. B & D Inspections, Inc. was also hired to oversee and supervise the work being done by L & L. B & D's independent inspector, Darrell McLemore, described to Reed the work that was to be done on the platform. In particular, he informed Reed that some work would be performed beneath the deck of the platform, in an area accessible through a hole in its grating. Two days after he arrived, Reed lifted a 4 × 8–foot piece of plywood and fell into the opening that it covered. He testified that he was never warned that the opening lay underneath the plywood and the board was neither tied down nor secured nor was its purpose marked in any way.

One of Reed's witnesses was a galley-hand who had served two-week tours of duty on the platform for nearly two months before the accident. He testified that the hole had been created some two to five weeks earlier by some workers who had cut out a section of grating and had not replaced it. Another witness supported Reed's testimony that the plywood was nei-

ther tied down nor marked with a warning sign.

Shell's testimony, to the contrary, explicitly pointed to L & L as the company which removed the grating and replaced it with plywood to facilitate employees' access to the piping beneath the deck. Darrell McLemore, the B & D inspector, testified that a week or so before the accident occurred, he saw that a manhole cover was missing, so he told a foreman of the L & L crew to place a sheet of plywood over it. He also testified that he had the plywood marked and tied down and that he personally warned Reed about the hole.

The jury found Shell liable as the custodian of a defective thing pursuant to Louisiana Civil Code Art. 2317. Shell, however, was exonerated from liability pursuant to Louisiana Civil Code Art. 2322 governing an owner's strict liability for a building in "ruin." The jury found Reed 50% negligent. The net judgment in favor of Reed and his wife was $165,000.

## II. SHELL'S LIABILITY UNDER ARTICLE 2317

■ We turn first to Shell's liability under Louisiana Civil Code Art. 2317.[1] Shell would liken its status in this case to that of the defendant in *Stine v. Creel,* 417 So.2d 1243 (La.App.1982), which, in attempting to have its roof repaired, was sued by a workman who negligently fell through the roof. As the Louisiana court held:

> ... RCC 2317 gives Stine no relief. Clearly Crown Zellerbach had custody of the warehouse. But the roof of the building, under the facts of this case, does not constitute a defective thing that caused injury to Stine. Again, it was not the roof that caused the injury—it was the manner about which Stine sought to remove it that caused the injury. 417 So.2d at 1246.

*Stine* is distinguishable. There, the plaintiff was injured, at least in part, by the very defect that he had been hired to repair. In this case, there was disputed testimony as to whether the plywood had been placed over the hole by L & L to suit its purposes or by Shell as a part of structural repairs to the platform.[2] Because of this conflict, the jury was entitled to decide that Shell or a contractor other than L & L had placed unmarked, non-secured plywood over that hole in the grating. Reed, consequently, was not injured by the dangerously defective condition that L & L had been hired to repair, nor was he injured by any act of L & L in furtherance of its repair work.

Our recent decision in *Boutwell v. Chevron,* 864 F.2d 406 (5th Cir.1988), reinforces this conclusion. In *Boutwell,* summary judgment was affirmed for Chevron, the platform owner, on a claim by a contractor's employee who tripped and fell through an un-barricaded hole. There, however, the evidence showed that the worker's employer had cut the hole in the platform to further its operations. We found, based on *Stine,* that Art. 2317 would not support liability.

As *Stine* does not justify a judgment n.o.v. for Shell, we likewise see no basis to award a new trial on this issue. The jury was faced with a substantial evidentiary conflict, and we cannot say that a new trial is required to verify their decision.

## III. DAMAGES UNDER ARTICLE 2317

■ Shell alternatively contends that under our ruling in *Nance v. Gulf Oil Corporation,* 817 F.2d 1176 (5th Cir.1987), interpreting the scope of Louisiana's comparative negligence statute, it was entitled to have the jury apportion negligence among Reed, Shell, L & L and B & D. The court

---

**1.** To prevail under Art. 2317, a plaintiff must prove that: (1) the thing which caused injury was in the custody of the defendant; (2) the thing contained some vice ("unreasonable risk of injury to another"); and (3) the vice caused the injury. *Entrevia v. Hood,* 427 So.2d 1146, 1147–48 (La.1983).

**2.** James Thornton, the galleyhand, testified that, "the platform was an old platform and they were cutting out pieces of the grating and replacing it, and that was just a piece of it. They go around cutting out a bunch of sections of the grating and then they go back and replace it, you know, and they just hadn't gotten back to replacing that."

refused to submit issues of L & L's and B & D's negligence to the jury. Although *Nance* was subsequently enacted by the Louisiana legislature, Art. 2324 (specifically authorizing the allocation of fault to a statutorily immune employer) (Amend. 1987), the Louisiana appellate courts have refused to apply the comparative fault provision existing between 1980–1987 to apportion fault between a solidary obligor and a statutorily immune employer. *Snyder v. Taylor*, 523 So.2d 1348, 1355 (La.App. 2d Cir.1988); *Senez v. Grumman Flexible Corp.*, 518 So.2d 574, 577 (La.App. 4th Cir. 1987), *writ. denied*, 521 So.2d 1151 (La. 1988); *Chatelain v. Project Square 221*, 505 So.2d 177, 186 (La.App. 4th Cir.1987). We must bow under *Erie* to the short-lived authority of the Louisiana cases contrary to *Nance*, as this case was tried in 1987. The trial court did not err in refusing to submit L & L's liability to the jury.

■ With regard to B & D's fault, Reed argues that *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La.1979), prohibits the application of the comparative fault statute to a building owner whose liability is tested by "strict liability" standards in Louisiana. In *Olsen*, the Louisiana Supreme Court stated that:

> The fault of a "third person" which exonerates a person from his own obligation imposing strict liability as imposed by Articles 2317, 2321 and 2322 is that which is the sole cause of the damage, of the nature of an irresistible and unforeseeable occurrence ... and where the "third person" is a stranger rather than a person acting with the consent of the owner in the performance of the owner's non-delegable duty to keep his building in repair.

*Id.* at 1293–94 (footnote omitted). The year after *Olsen* was decided, the Louisiana legislature enacted comparative and contributory fault statutes, Arts. 2323 and 2324. Art. 2324 provided that:

> Persons whose concurring fault has caused injury, death or loss to another are also answerable, *in solido;* provided, however, when the amount of recovery has been reduced in accordance with the

preceding article [plaintiff's contributory negligence statute], a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.

Shell contends that Art. 2324 supersedes *Olsen* and thus required submission of B & D's negligence to the jury. Pursuant to Art. 2324, all defendants remain liable *in solido* for a plaintiff's entire damages, except to the extent that a defendant may be found less at fault than the plaintiff himself.

This appears to be an issue of first impression under Louisiana law, perhaps because the plain reading of Art. 2324 suggests the correctness of Shell's position. We are obliged by *Erie* to examine state law and determine how Louisiana courts would rule on the intersection of *Olsen* and Art. 2324. We conclude that the trial court erred in refusing to apply the comparative negligence statute to inquire about B & D's possible negligence.

From Reed's standpoint, much depends upon characterizing Shell's exposure under Art. 2317 as a "strict liability" standard. This terminology appears to differentiate Art. 2317 from an "ordinary" negligence action. Consequently, the phrase "strict liability" both heightens Shell's responsibility and simultaneously makes it seem incongruous to "compare" the fault of Shell and any third party working on its rig when Reed was injured. We must, however, disagree with Reed's characterization of Art. 2317 liability. Art. 2317 is simply not equivalent to common law strict liability or liability without fault, nor does *Olsen* hold otherwise. Former Louisiana Supreme Court Associate Justice Mack Barham explains that: "Arts. 2317 to 2322 impute a lack of care, diligence and skill to the keeper or custodian when the persons or things in his custody act to cause damage. *It can be said that these articles are founded in a form of negligence by imputation, and cannot be fairly said to give rise to liability without negligent fault or*

*want of care."* M. Barham, *The Viability of Comparative Negligence as a Defense to Strict Liability in Louisiana,* 44 La.L. Rev. 1171, 1190 (1984) (emphasis added). Thus, there is no inherent contradiction in applying doctrines of contributory or comparative fault to Louisiana's custodial liability provisions.

Indeed, relying on Louisiana court cases decided since the passage of the contributory and comparative negligence statutes, this Court held in *Hyde v. Chevron,* 697 F.2d 614, 629–30 (5th Cir.1983), that contributory negligence constitutes a defense to a custodial liability claim under Louisiana law. *Hyde,* while discoursing specifically upon the doctrine of contributory negligence, suggestively quoted Professor Plant's statement that:

> [T]here is nothing in the basic strict liability policy that requires that a defendant pay all and plaintiff fault be ignored. A similar view is warranted as to parents, owners of animals, and owners or custodians of things. For reasons that have roots deep in the history of the Louisiana Civil Code such persons carry the burden of strict liability; *but the Louisiana courts have repeatedly held that the obligation is not absolute and can be extinguished by plaintiff's negligence.*

*Id.* at 629 (emphasis in original).

Scholarly commentary has approved the decision in *Hyde* and suggested that it foreshadows application of comparative fault to such cases. M. Barham, *supra* at 1181 (concluding that "the application of contributory/comparative negligence in most strict liability cases seems imminent"); D. Robertson, *Ruminations on Comparative Fault, Duty–Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability Litigation in Louisiana,* 44 La.L.Rev. 1341, 1351 n. 56 (1984).[3]

The Louisiana Supreme Court has not decided the precise issue at hand, but its construction of Art. 2323 in *Lemire v. New Orleans Pub. Serv., Inc.,* 458 So.2d 1308, 1309 (La.1984), is likewise suggestive:

> With the adoption of comparative fault ..., the fault or non-fault, and the percentage of fault attributable to each person, whether party to the lawsuit or not, has become relevant in the determination of damages to which the injured plaintiff is entitled.

Thus, we see no reason to apportion a plaintiff's contributory fault but not to require the same for a joint tortfeasor's comparative fault, and there is every indication that the Louisiana courts would require us to do so.

Before ending this discussion, however, we must address two other arguments by Reed. Appellees observe that *Hyde* not only held that contributory negligence could apply to eliminate a defendant rig owner's custodial liability for a defective thing, but it also concluded that because of *Olsen,* third-party fault might not be defensively employed. This result must be attributed to the fact that *Hyde,* although decided in 1983, arose from an accident in 1977, before the advent of the comparative negligence statute. Hence, liability was founded on substantive principles predating comparative negligence, when the law embodied in *Olsen* would have controlled. This aspect of *Hyde* does not detract from our conclusion.

Additionally, we reject Reed's contention that a custodian whose liability derives from Arts. 2317–2322 may not, after *Olsen,* be held liable *in solido* with a negligent third-party (whether a "stranger" or not). Comparative fault depends, it is true, upon the potential liability of joint tortfeasors *in solido* for the damage caused. The Louisiana Supreme Court held in *Narcise v. Illinois Gulf Central R. Co.,* 427 So.2d 1192 (La.1983), that a railroad employer liable under FELA could be liable *in solido* with a manufacturer of the train coupling which

---

**3.** *See, also,* M. Barham, *supra* at 1189–91 ("the best standard for evaluation would appear to be the degree of causation or contribution attributable to each party responsible for the risk"); D. Robertson, *supra* at 1385–86, 1390 ("all forms of victim and tortfeasor fault should be quantified in strict liability and negligence cases for purposes of determining the rights and liabilities of all parties in the litigation").

failed. Because the FELA imposes liability upon the very loose test of "feather weight" negligence, we cannot believe that Louisiana courts would hold less comparable, for fault purposes, custodial liability and ordinary negligence tortfeasors. *See also Richoux v. Hebert,* 449 So.2d 491 (La. App.1983), *writ denied,* 450 So.2d 368 (owner of racehorse, who was strictly liable under Art. 2321 for injury caused by it, was liable *in solido* with negligent owner of racetrack; no comparative fault discussion).

For the foregoing reasons, we REVERSE the judgment and REMAND for a new trial including submission to the jury, if appropriate, of the issue of B & D's degree of fault.

REVERSED and REMANDED.