579 So.2d 947 (1991)
Mary GUIDRY, et al.
v.
FRANK GUIDRY OIL COMPANY, et al.
Nos. 91 C 0078, 91 C 0111.
Supreme Court of Louisiana.
May 6, 1991.
Dissenting Opinion May 13, 1991.
*948 Jeffrey M. Bassett, Morrow, Morrow, Ryan & Bassett, Opelousas, for Mary Guidry, et al., plaintiff-applicant.
Gene S. Palmisano, New Orleans, for Exxon Corp. defendant-respondent.
D. Mark Bienvenu, Voohries & Labbe, Lafayette, for Frank Guidry Oil Co., defendant-respondent.
Dissenting Opinion of Justice Hall May 13, 1991.
WATSON, Justice.
This tort suit concerns the death of a 26 year old worker in an explosive fire. Writs were granted to consider the apportionment of fault between the parties and the effect of comparative fault by an employer with tort immunity.

FACTS
On May 13, 1985, at approximately 5:00 a.m., Jessie James Guidry was standing in the bed of a pickup truck filling a 55 gallon drum with diesel fuel. An explosion occurred, which resulted in Guidry's death from burns several hours after the accident. This suit was brought by his widow, Mary Knott Guidry, individually and on behalf of their two minor sons, Yancy Joseph Guidry and Jade Michael Guidry, to recover damages for the loss of their husband and father. At the time of the fatal accident, Guidry was in the course and scope of his employment with Louisiana Swabbing, an oilfield service company. The employer and its insurer, Pacific Marine *949 Insurance Company, intervened to recover the medical and funeral expenses and compensation benefits which had been paid. The diesel fuel had been supplied by Frank J. Guidry Oil Company, Inc., which is insured by Fireman's Fund Insurance Company. Guidry Oil is an exclusive distributor for Exxon Oil Corporation and carries the Exxon logo on its trucks.
Diesel fuel will not explode unless it is contaminated by gasoline. According to an Exxon advisory to its dealers:
While vapors in a gasoline tank are too rich to burn, and those in a diesel tank too lean to burn, a blend of gasoline and diesel fuel can produce vapor concentrations in the vehicle fuel tank that fall within the explosive range at normal ambient temperatures. Subsequent fueling with diesel fuel can build up static charge during the process and cause a spark that could violently ignite the vapors.
This phenomenon is essentially the same as that which has been experienced during `switch loading' of tank trucks (i.e., loading a fuel product of different characteristics than that previously contained in the tank). For example, when a tank truck containing vapors from a previous load of gasoline is loaded with a distillate fuel such as No. 2 diesel fuel or kerosene, explosions and fires can occur, due to sparks produced by static electricity generated in the pumping and filtering system. Exhibit P-21.
It is undisputed that the diesel fuel which decedent had been pumping was contaminated with approximately five percent gasoline, making it explosive. The truck used by Guidry Oil to make its last delivery of diesel to Louisiana Swabbing had five compartments which were used interchangeably for gasoline and diesel. The tanks were drained when the product was changed. Prior to Louisiana Swabbing's last diesel delivery, the hose on Guidry Oil's truck had been used to deliver gasoline. The gasoline contamination of the diesel apparently resulted from Guidry Oil's custom of carrying diesel and gasoline interchangeably in the same tanks, using the same drop hose or line for deliveries.
The employees of Guidry Oil indicated little understanding of the danger involved in mixing diesel and gasoline. Green, the manager of the company, and Menard, the driver who made the last diesel delivery to Swabbing, were not aware that one percent of gasoline makes diesel flammable.
What caused ignition of the explosion was disputed at trial. There was evidence that either decedent or a co-worker may have been lighting a cigarette; evidence that no one was smoking; and evidence that the most probable cause of the fire was static electricity.
The pickup was on Louisiana Swabbing's wash rack next to an above ground diesel tank. When Guidry tried pumping the diesel, there was no flow of fluid. A co-worker, Girod, observed that the pickup truck's tire was resting on the hose. Girod moved the truck forward a couple of feet to free the hose and left the motor running. The explosion occurred about two seconds later. Girod was only a foot from the truck, but he was not hurt. The entire back end of the truck burned, as Guidry jumped out in flames.
Louisiana Swabbing's tool pusher, Melancon, had just driven his pickup next to the wash rack when the explosion occurred. The truck and Guidry were engulfed in flames, and Melancon saw Guidry jump out, running and screaming. Two other co-workers, Quibedeaux and Caillier, were also at the scene. All four co-workers testified that Guidry was not smoking immediately prior to the accident. They also said that none of them were smoking. By the time the flames were extinguished, only Guidry's undershorts remained on his charred body.
The only evidence that Guidry may have been smoking was given by Savoy, a horse trainer, who testified that he saw two men standing near a gas tank next to a pickup truck at Louisiana Swabbing around 4:45 a.m. Neither man was standing in the bed of the pickup. Although it was still dark, Savoy saw a red glow from a lighted cigarette held by a man wearing dark pants. *950 Savoy went inside his barn, heard the explosion and came out to see that man on fire. According to the photographic evidence, Savoy was at least fifty yards from the site of the accident.
At one time, Louisiana Swabbing posted "no smoking" signs on its gas and diesel tanks but these were removed when the tanks were painted and had not been replaced.
Douglas Motty investigated the accident later that morning. The barrel which Guidry had been filling had the bottom blown out of it by the explosion, but the other barrel was relatively intact. Jessie Guidry's cigarettes and lighter, which he carried in his shirt pocket, were found on the ground behind the truck.
William B. Rawl, a staff technical advisor in the marketing department of Exxon, is responsible for Exxon's technical publications. Exxon publishes a manual for its distributors, which includes information on product precautions. On April 26, 1982, prior to this accident, Guidry Oil canceled its subscription to this free publication. Exxon Exhibit 4 is a "TECHNIGRAM" dated November 30, 1982, which states: "REMINDER: Never blend gasoline with diesel fuel. While vapors in a gasoline tank are too rich to burn, and those in a diesel tank too lean to burn, a blend of gasoline and diesel fuel can produce vapor concentrations that fall within the explosive range. These vapors may be violently ignited by sparks from static electricity generated during subsequent fueling with diesel fuel." Guidry Oil did not receive this warning, although its substance had been contained in earlier publications.
Dr. David L. Bernard, an expert in physics, admitted that diesel is not explosive without the addition of a flammable additive such as gasoline. He and John Kennedy, an expert in the cause of fires and explosions, thought the probable ignition source of this fire was a cigarette or a cigarette lighter.
Andrew T. Armstrong, an expert chemist specializing in the analysis of fire debris, testified that lighting a cigarette, static electricity or a running motor will not ignite pure diesel under any circumstances. Adding one or two percent gasoline to diesel will produce anything from a mild flash and burn to an explosion. Every drop of gasoline added to diesel lowers the flash point. If three to five percent gasoline is added to diesel, a cigarette is unlikely to cause an explosion. Sparks from a cigarette lighter might cause an explosion of gasoline contaminated diesel. Even on a humid day, pouring gasoline contaminated diesel into a drum can create static electricity. According to Armstrong, when the contaminated diesel went into the drum, the voltage buildup of static electricity was instantaneous.
The jury answered interrogatories, which found Guidry Oil 35 percent at fault, Jessie Guidry 45 percent at fault and Louisiana Swabbing 20 percent at fault. No fault was assigned to Exxon. The jury awarded $9,022 for medical and funeral expenses, $532,000 for loss of support and $526,000 in general damages, apportioned: $142,000 to Mary Guidry; $192,000 to Yancy Guidry; and $192,000 to Jade Guidry.
The trial court applied LSA-C.C. art. 2324 as it read at the time of this accident.
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
Because the jury found decedent's fault to be greater than the oil company's fault, the trial court did not add the fault of Louisiana Swabbing to that of Guidry Oil.
LSA-R.S. 23:1101(B), as amended, effective September 6, 1985, about four months after this accident, provides:

*951 Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person and, where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage.
On the issue of whether the worker's compensation intervention claim of Pacific Marine Insurance Company should be reduced by comparative negligence, the trial court concluded that the 1985 amendment was substantive and should not be applied retroactively. The amount awarded for medical and funeral expenses was changed to the stipulated sum of $9,122.44.
Plaintiffs received judgment against Frank J. Guidry Oil Company, Inc. and Fireman's Fund Insurance Company for 35 percent of the monetary awards made by the jury. The intervention of Pacific Marine Insurance Company was granted and the compensation insurer was allowed recovery of all sums paid until the time of judgment and a credit against all future compensation.
The court of appeal amended the judgment by allocating Louisiana Swabbing's 20 percent of fault between plaintiffs and Guidry Oil "... in proportion to their previously determined degrees of fault (35/80 and 45/80)," making Guidry Oil's portion of the 20 percent fault 8.75 percent and plaintiffs' share 11.25 percent. Thus, Guidry Oil was responsible for 43.75 percent of plaintiffs' damages. Guidry v. Frank J. Guidry Oil Co., Inc., 572 So.2d 607 at 612 (La.App. 3d Cir.1990). Writs were granted to consider the judgment of the court of appeal. 575 So.2d 381 (La.1991).

STRICT LIABILITY
The jury was charged on strict liability as to Exxon and apparently concluded that manufacturer Exxon was not responsible for the defective condition of the diesel supplied to Louisiana Swabbing. There was a reasonable factual basis for that determination. The evidence indicates that the diesel was not contaminated and unreasonably dangerous when it left the control of Exxon. Exxon was aware of the highly dangerous and flammable nature of gasoline adulterated diesel and repeatedly warned its distributors.
The jury was not charged that Guidry Oil, the supplier of the diesel, might be strictly liable. However, a commercial supplier who sells a product in a defective and unreasonably dangerous condition is strictly liable for harm caused by the defect, even if the supplier was not negligent.
In order to recover from Guidry Oil as supplier of a defective product, plaintiffs had to prove that: (1) the injury or damage resulted from the condition of the product; (2) the condition made the product unreasonably dangerous in normal use; and (3) the condition existed at the time the product left the control of the supplier. Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985).
Jessie Guidry's death resulted from the explosive nature of the diesel fuel supplied by Guidry Oil Company. The diesel fuel was contaminated with gasoline and defective, making it unreasonably dangerous in composition. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La. 1986). Without considering the strict liability aspect of Guidry Oil's fault, the jury could not properly quantify the comparative fault of that defendant and decedent. See Picou v. Ferrara, 483 So.2d 915 (La. 1986).
Supplier Guidry's haphazard attitude toward safety is best illustrated by its cancellation of a free safety publication published by Exxon. Adulteration of the fuel served no useful purpose, and it could have been easily prevented. Guidry Oil had been warned of the danger but ignored the *952 warnings and put a traveling bomb on the public highways. Seventy percent of the fault for this accident must be assessed to Guidry Oil. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).

DECEDENT'S COMPARATIVE FAULT
Because the jury was not properly charged, it did not correctly evaluate the parties' comparative fault. Since the jury was erroneously instructed, its findings are tainted and entitled to no weight. Picou, supra. Defendants did not prove the 45 percent of fault assigned to decedent; the jury's conclusion is clearly wrong. Smith v. Travelers Ins. Co., 430 So.2d 55 (La. 1983).
As to the cause of the explosion, the most likely hypothesis, consistent with the timing of the explosion, Exxon's warnings, and the testimony of expert Armstrong, is that moving the pickup truck tire off the diesel line caused a surge of fuel, which was ignited by static electricity. However, the jury apparently concluded that decedent lit a cigarette as he was pumping the contaminated diesel fuel and set off the explosion. Although the diesel would not have ignited if it had not been defective, the jury may have thought that ordinary prudence required decedent to refrain from smoking in the presence of fuel.
Assuming that defendants proved decedent's ordinary negligence combined with the defective diesel to cause the explosion, a 45 percent reduction in the recovery of his survivors serves no public purpose. It reduces the supplier's economic incentive to control the quality of its product. Conversely, it provides no greater incentive for employees to refrain from smoking than was furnished by decedent's horrible death. See Bell, supra.
Applying the factors in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), any negligence by decedent resulted from inadvertence. Lighting a cigarette, an habitual act, represented only a momentary lapse of attention. In the presence of inert diesel, decedent's action would have presented no danger. There was a risk only because the diesel fuel was contaminated, adulterated and dangerous. Being ignorant of the diesel's hidden defect, decedent did not assume the risk of that defect. See Rozell v. Louisiana Animal Breeders Co-op., 496 So.2d 275 (La. 1986).
Decedent was in an inferior position, vis-a-vis Guidry Oil, as an employee who was unaware of the product's defect. Under these circumstances, any ordinary negligence of the deceased employee in lighting a cigarette must be weighed against the greater fault of the supplier that marketed a defective and explosive product. Bell, supra. Guidry Oil is strictly liable for supplying a defective product. Decedent's comparative fault cannot be greater than ten percent. See Turner v. New Orleans Public Service, Inc., 476 So.2d 800 (La. 1985). Compare Bell, supra; Thompson v. Tuggle, 486 So.2d 144 (La.App. 3d Cir. 1986), writ denied, 489 So.2d 919; Lanclos v. Rockwell Intern. Corp., 470 So.2d 924 (La.App. 3d Cir.1985), writ denied, 477 So.2d 87; and Robertson v. Superior PMI, Inc., 791 F.2d 402 (5th Cir.1986).

NEGLIGENCE OF THE EMPLOYER
Louisiana Swabbing negligently failed to post no smoking signs on its fuel tanks. Adopting the jury's apparent conclusion that a cigarette or cigarette lighter ignited the explosion, some fault can be assigned to Louisiana Swabbing. The general lack of safety precautions or instructions furnish a reasonable evidentiary basis for the jury's conclusion that Louisiana Swabbing was twenty percent at fault. Unlike decedent, Louisiana Swabbing could deal on an equal basis with Guidry Oil Company.
The rights and remedies of an employee in the Louisiana compensation scheme exclude all other rights and remedies against the employer. LSA-R.S. 23:1032. The employee retains his right to tort recovery against a negligent third party. LSA-R.S. 23:1101. The employer who pays compensation also has the right to bring suit against a negligent third party or to intervene in an employee's suit. LSA-R.S. 23:1101-02. When there is a suit against a *953 negligent third party and damages are recovered, the claim of the employer for repayment of compensation has priority over that of the injured employee or his surviving dependents. LSA-R.S. 23:1103.
Other jurisdictions are divided on the issue of whether an employer's negligence can be considered in an employee's suit against a third party tortfeasor. The conflict between a scheme of comparative negligence and an employer's tort immunity under worker's compensation was recognized in Heckendorn v. Consolidated Rail Corp., 502 Pa. 101, 465 A.2d 609 (1983). Heckendorn held that comparative negligence does not allow consideration of an employer's negligence. Also see Beach v. M & N Modern Hydraulic Press Co., 428 F.Supp 956 (D.Kan.1977); Arctic Structures, Inc. v. Wedmore, 605 P.2d 426 (Ala. 1979); Thompson v. Stearns Chemical Corp., 345 N.W.2d 131 (Iowa 1984); Ramos v. Browning Ferris Industries, 103 N.J. 177, 510 A.2d 1152 (1986); and Port Auth. v. Honeywell Prot. Serv., 222 N.J.Super 11, 535 A.2d 974 (1987).
Wisconsin has adopted the other position: failure to have a jury consider an employer's negligence in apportioning fault is reversible error. Connar v. West Shore Equipment of Milwaukee, 68 Wis.2d 42, 227 N.W.2d 660 (1975). Also see Keefer v. Al Johnson Construction Co., 292 Minn. 91, 193 N.W.2d 305 (1971); Scales v. St. Louis-S.F. Ry. Co., 2 Kan.App.2d 491, 582 P.2d 300 (1978); Pocatello Ind. Park Co. v. Steel West, Inc., 101 Idaho 783, 621 P.2d 399 (1980); and McDevitt v. Terminal Warehouse Co., 346 Pa.Super 186, 499 A.2d 374 (1985). Professor Arthur Larson describes the arguments in the controversy as evenly-balanced. 2A Larson, Workmen's Compensation Law, Sec. 76.11 at 14-561 (1982).
Reed v. Shell Offshore, Inc., 872 F.2d 680 (5th Cir.1989), recognized that Louisiana's courts of appeal had refused to apportion fault between a solidary obligor and a statutorily immune employer. Reed held that the trial court did not err in refusing to submit the employer's liability to the jury. See Snyder v. Taylor, 523 So.2d 1348 (La.App. 2d Cir.1988), writ denied, 531 So.2d 267; Senez v. Grumman Flxible Corp., 518 So.2d 574 (La.App. 4th Cir.1987), writ denied, 521 So.2d 1151; and Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir.1987), writ denied, 508 So.2d 71. Reed followed these Louisiana cases.
In the employee/employer bargain of a worker's compensation scheme, the employee surrenders the possibility of tort recovery for the certainty of compensation and the employer receives tort immunity in exchange for paying compensation. "The claim of the employee against the employer is solely for statutory benefits; his claim against the third person is for damages. The two are different in kind and cannot result in a common liability." Third-Party Action Over Against Workers' Compensation Employer, 1982 Duke L.J. 483, 488. The compensation principle is independent of fault.
At the time of this accident, the only statutory authority for considering employer fault was an oblique reference in a jury instruction statute. LSA-C.C.P. art. 1812 had been amended by Act 534 of 1983 to allow a jury interrogatory asking:
"(2) If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage."
Interpreting the amendment, Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984), held that a jury interrogatory on the fault of a party immune from trial by jury was mandatory when supported by the evidence. However, the compensation principle excludes the concept of employer fault. It is not clear that the statutory language was intended to embrace employer fault. Since the statute does not specifically require juries to consider the comparative fault of employers, there is no express legislative directive on the issue. Extending the amendment to employers would violate the compensation *954 principle and cannot be done by implication. Thus, the trial court erred in having the jury quantify the fault of Louisiana Swabbing. See Franklin v. Oilfield Heavy Haulers, 478 So.2d 549 (La.App. 3d Cir. 1985), writ denied, 481 So.2d 1331 (1986).
Since the jury erred in assigning "fault" to Louisiana Swabbing, that percentage of fault must be disregarded. See Davis v. Commercial Union Ins. Co., 892 F.2d 378 (5th Cir.1990). Because decedent has 10 percent of fault and the third party tortfeasor has 70 percent of fault, the total fault must be apportioned between decedent and the tortfeasor at a one to seven ratio. See Robertson, The Louisiana Law of Comparative Fault: a Decade of Progress, forthcoming publication by the LSU Law Center. Decedent's fault is thereby increased to 12.5 percent and Guidry Oil Company's fault is increased to 87.5 percent.

CONCLUSION
For the foregoing reasons, the judgment of the court of appeal is amended to assess decedent with 12.5 percent comparative fault. The judgment of the court of appeal is also amended to assess Frank J. Guidry Oil Company, Inc. with 87.5 percent comparative fault.
It is ordered that there be judgment in favor of plaintiffs, Mary Knott Guidry, Yancy Joseph Guidry and Jade Michael Guidry, and against defendants, Frank J. Guidry Oil Company, Inc. and Fireman's Fund Insurance Company, for 87.5 percent of the damages awarded by the jury and the stipulated medical and funeral expenses. All costs are assessed to Guidry Oil and Fireman's Fund.
AMENDED AND RENDERED.
CALOGERO, J., dissents.
LEMMON, J., dissents and assigns reasons.
HALL, J., dissents in part and assigns reasons.
LEMMON, Justice, dissenting.
This case presents the issue of how to handle employer fault in comparative fault cases involving multiple tortfeasors.[1] The majority's resolution by disregarding employer fault and prohibiting the jury from quantifying such fault is attractive in its simplicity and ease of application. Nevertheless, the unfairness of allowing an employer whose fault may be as high as ninety-nine percent to escape tort liability completely, while recovering fully its worker's compensation lien, warrants a more indepth examination of these consequences which could not have been intended in the worker's compensation trade-off to the employer of compensation liability in exchange for tort immunity. Under the majority's result, a grossly negligent employer is immune from both tort and compensation liability because of the combined operation of the solidarity laws regarding the third party tortfeasor's liability and the literally interpreted compensation statutes regarding the employer's recovery against third parties.
The handling of employer fault in cases with multiple tortfeasors presents two principal questions: (1) whether the jury should allocate a percentage of fault to the employer and (2) how that percentage allocation should affect the rights of the plaintiff, the employer, and the remaining tortfeasor or tortfeasors.
On the first question, the jury should be required to allocate a percentage of fault to the employer when the evidence establishes the employer's fault. A jury which has been presented with evidence of fault by several persons should be required to deal in reality rather than to fictionalize proved fault out of the verdict. Telling the jury to quantify one hundred percent of the fault established by the evidence, but to disregard part of the evidence, not only confuses the jurors, but also encourages the jurors to guess at the reason for not quantifying this fault and perhaps to adjust *955 their quantification of the fault of others in accordance with that guess. Furthermore, a defendant whose fault is less than that of the plaintiff is entitled to escape solidary liability under La.Civ.Code art. 2324, and prohibiting the jury from considering the employer's fault could result in a distortion of the fault of others, thereby adversely affecting the less blameworthy defendant's entitlement. When a jury is presented with evidence of the fault of several persons, the procedure is simpler, fairer and more logical to require the jury to quantify one hundred percent of the fault established by the evidence.
What to do with the quantified fault of the employer is a much more difficult question. I would interpret La.Rev.Stat. 23:1101 B, which makes the employer's worker's compensation lien "identical in percentage to the recovery of the employee", as intended to apply only to an employer who is itself without fault. When the employer is also at fault, as in the present case, I would additionally reduce the employer's worker's compensation recovery by the employer's percentage of fault.[2]
La.Rev.Stat. 23:1032 grants the employer tort immunity from claims by the employee. La.Rev.Stat. 23:1101 B further grants the employer the right to recover, when a third party caused the employee's injury, the compensation benefits and medical expenses paid or payable by the employer. While Section 1011 B provides expressly for a decrease in the employer's amount of recovery against a third party tortfeasor by the percentage of the employee's fault, nothing in the worker's compensation statutes prohibits a reduction of the employer's compensation recovery by the proportionate degree of the employer's fault in accordance with general comparative fault principles.
The fairness of this resolution may be illustrated by an example. Suppose that the employee's injury is attributable ninety percent to the employer's unsafe premises and ten percent to the third party tortfeasor's fault. If the damages are $1,000,000 and the worker's compensation lien is $400,000, the result would be as follows:
Employer
No liability in tort.
Recovery of $40,000 on worker's compensation lien ($400,000 minus 90%).
Employee
Full recovery$400,000 paid in worker's compensation benefits and medical expenses, plus $600,000 paid by third party tortfeasor.
Third party tortfeasor
Total liability $640,000 ($600,000 to employee in tort damages, plus $40,000 to employer for 10% of worker's compensation lien).
In this example the employer who is ninety percent at fault has its worker's compensation lien recovery reduced by that amount, and the third party tortfeasor who is only ten percent at fault gets the benefit of a credit in the amount of recovery denied to the employer, while the employee gets the full recovery of his damages afforded by solidary liability principles.
In the present case this resolution would produce the following result:
Employer
No liability in tort.
Recovery of 70% of worker's compensation paid (reduced by 10% because of the employee's fault and an additional 20% because of the employer's fault).
Employee's dependents
90% recovery of $1,067,122.44 judgment by keeping worker's compensation benefits and funeral expenses, plus remainder paid by third party tortfeasor (minus 10% for the employee's fault).

*956 Third party tortfeasor

Total liability for $1,067,122.44, minus 10% reduction for the employee's fault and minus a credit for the 20% of the worker's compensation lien that the employer cannot recover.
In my opinion this is the fairest way to allocate the employer's fault consistent with the framework of the worker's compensation scheme and with solidary liability and comparative fault principles.
HALL, Justice, dissenting in part.
I respectfully dissent in part.
I agree with the majority opinion's conclusions as to the respective degrees of fault of the parties: decedent (employee) 10%, Guidry Oil (third-party tortfeasor) 70%, and Louisiana Swabbing (employer) 20%. Having reached this conclusion, which establishes the injured person's fault at a lesser degree than that of the third-party tortfeasor, there is no need to apportion the employer's fault. Under the provisions of LSA-C.C. Arts. 2323 and 2324 applicable to this case, plaintiffs are entitled to recover the full amount of their damages, reduced in proportion to the degree or percentage of negligence attributable to the decedent. Thus, plaintiffs are entitled to 90% of their damages.
The apportionment of the employer's fault on a ratio theory, as done by the majority, serves to reduce plaintiffs' recovery (from 90% to 87.5% in this case) by attributing a portion of the employer's fault to the employee contrary to the scheme of the workers' compensation law. It is also contrary to the scheme of the comparative fault law, which is to quantify the fault of all persons whose fault is a contributing cause of a plaintiff's injury. See LSA-C.C.P. Arts. 1812 and 1917; Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984). The degree of fault of the parties, particularly that of the person suffering the injury which is the initial focus of a comparative fault determination, can only be realistically determined by considering the fault of all the persons involved in the accident, whether or not parties to the suit and whether or not liable to the plaintiffs for damages or liable to other tortfeasors for contribution.
Judgment should be rendered in favor of the plaintiffs for 90% of the damages awarded by the jury.
NOTES
[1] This case arose before the 1987 amendment to the solidary liability provisions of La.Civ.Code art. 2324.
[2] Under this interpretation the third party tortfeasor, in paying the judgment, would get a credit against his solidary liability for tort damages by the amount of the reduction of the employer's worker's compensation lien. (This credit is in addition to the reduction of the tortfeasor's liability based on the proportionate fault of the employee.) At the same time the injured employee would get full recovery by keeping part of the compensation paid or payable and by receiving the remainder of his damages from tort recovery against the third party tortfeasor.