United States Court of Appeals,

Fifth Circuit.

No. 92-4934.

Wayne M. PRESTENBACH and Jane B. Prestenbach, Plaintiffs-Appellants,

and

Texas Eastern Transmission Corporation and Texas Eastern Gas Pipeline Co., Intervenors-Plaintiffs-Appellants,

v.

David RAINS, et al., Defendants,

Maryland Casualty Co., Taylor Technical Services, and Northern Ins. Co., of New York, Defendants-Intervenors-Defendants-Appellees.

Oct. 14, 1993.

Appeals from the United States District Court for the Western District of Louisiana.

Before JOHNSON, JOLLY and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The Prestenbachs, plaintiffs, and the employer-intervenor, Texas Eastern Transmission Corporation, appeal from a judgment awarding plaintiffs 107 of Wayne Prestenbach's damages caused by a work-related accident. Among the various points raised on appeal by these parties, two are significant: whether under La.Civ.Code art. 2324 B the question of Texas Eastern's negligence should have gone to the jury, and how the statute meant to apportion such negligence in the judgment; and whether there was enough evidence of Texas Eastern's negligence to create a jury issue. Following a decision of the Louisiana Supreme Court, we hold that Texas Eastern's negligence was properly submitted to the jury, and as there was sufficient evidence to support their allocation of fault, the "ratio approach" holds appellee liable for 407 of the damages. The judgment is affirmed as modified.

Wayne Prestenbach, an experienced electrician, had become a supervisor over electrical maintenance employees for Texas Eastern at its Iowa, Louisiana, plant when he was called back to work temporarily in Texas Eastern's Pointe-Au-Chein gas processing plant, where he had previously

worked for six years. Texas Eastern needed his plant experience as it installed a variable speed drive controller on its 8,000 horsepower motor at Pointe-Au-Chein to reduce electrical consumption. David Rains, an independent contractor electrical engineer, was hired by Texas Eastern from Taylor Technical Services as a consultant concerning the installation of the variable speed drive. Although Rains disputes it, Prestenbach asserted that Rains instructed him to ground the "K-2 capacitor" on the morning of March 5, 1989. Unfortunately, there was no K-2 capacitor. The capacitor Prestenbach tried to ground was connected to the plaint's main bus, which was energized with 4,160 volts of electricity. When Prestenbach attempted to ground this capacitor, he released a fireball of electricity into the air, severely burning himself and two other men.

Prestenbach brought a negligence action against Rains and Taylor. Texas Eastern intervened to collect all or part of the workmen's compensation it had paid to Prestenbach. Settling an argument hotly disputed among the parties, the district court held that under the recently amended Louisiana comparative fault statute, the negligence of Texas Eastern should be submitted to the jury even though, as Prestenbach's employer, Texas Eastern's liability was limited to that prescribed by Louisiana's workers compensation law. Accordingly, the eight jurors determined that Texas Eastern was 757 at fault, Prestenbach was 157 at fault and Rains was 107 at fault. Damages of over $800,000 were awarded. The court entered judgment against Taylor, however, for only the 107 negligence attributed by the jury to its employee Rains. This result, the court held, was compelled by a proper reading of art. 2324 B.

As was previously stated, two decisive questions are presented: (1) whether the trial court correctly construed art. 2324 B, and (2) whether reasonable jurors could have found that Texas Eastern was 757 at fault.

## I. ARTICLE 2324 B

The place, if any, in Louisiana's comparative fault scheme of the negligence of an employer statutorily immune from damage liability has varied widely in recent years. *See generally,* David Robertson, The Louisiana Law of Comparative Fault: A Decade of Progress (LSU 1991). An opinion of this court, interpreting Louisiana law before art. 2324 B was passed, held that the

employer's negligence should be apportioned by the jury despite its statutory immunity from liability. *Nance v. Gulf Oil Corp.,* 817 F.2d 1176 (5th Cir.1987). A slew of state cases disagreed with this interpretation, however, and bowing to their authority, this court enforced the opposite view of the law two years later. *Reed v. Shell Offshore, Inc.,* 872 F.2d 680 (5th Cir.1989). The Louisiana legislature had entered the debate by amending La.Civ.Code art. 2324 in 1987 to provide, prospectively, that the employer's negligence should be included in a jury submission on comparative negligence despite the employer's statutory immunity. La.Civ.Code art. 2324 B.[1] Thus, the current answer to the question whether Texas Eastern's negligence should have been submitted to the jury is unequivocally yes. *Gauthier v. O'Brien,* 618 So.2d 825 (La.1993). Consequently, where an employee is hurt at work and sues non-immune defendants, the jury should apportion fault among those parties and the statutorily immune employer, if the employer's fault also contributed to the injury.

Submission of that issue does not, however, resolve the question what should be done with the employer's share of the fault when judgment is entered. Article 2324 B may be considered ambiguous, but a recent decision of the Supreme Court of Louisiana provides guidance. In *Gauthier v. O'Brien, supra,* the state Supreme Court delivered the following pronouncement:

> While employer fault must be quantified by a jury to enable the jury to reach a fairer determination of the relative fault of all blameworthy parties, the judge, after the jury has returned a verdict, should disregard the proportion of fault assessed to the employer and

---

[1]Article 2324 B provides:

> If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages, however, when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as described in Paragraph A of this Article, or as otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.

reallot the proportionate fault of all other blameworthy parties.

618 So.2d 832-33. *Gauthier* stated that it adopted the "ratio approach" from *Guidry v. Frank Guidry Oil Co.,* 579 So.2d 947 (La.1991). *Id.*

Precisely what the ratio approach means in the present case is not clear. Taylor argues with some force that the ratio approach applies only to a case, like that described in footnote 11 of *Gauthier,* in which the plaintiff employee was not guilty of negligence or, at least, was less negligent than the non-immune defendant in question. Taylor emphasizes the following language in art. 2324 B:

> ... When the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable *for more than the degree of his fault* to a judgment creditor to whom a *greater degree of fault* has been attributed.

According to Taylor, this language embodies a statutory limit of a non-immune defendant's liability to its virile share when the plaintiff's contributory negligence was assessed in a greater amount. *Gauthier* did not discuss this possibility. *Gauthier* was decided on a preliminary motion, so the court could not address whether the plaintiff's negligence was greater than that of the third-party defendant. In *Guidry,* the Louisiana Supreme Court found the decedent only 107 negligent, while the non-immune defendant was found 707 at fault. The ratio approach was thus hatched in a classic case of greater defendant fault.

Further, Taylor points out, that particular language in Article 2324 B was not changed when the statute was amended in 1987. Because at that time the proviso appeared to restrict a non-immune defendant's liability to its virile share if the plaintiff was more negligent, the amendment to article 2324 B did not change this result.

Strong as this argument is, however, Taylor ultimately fails to grapple with two facts. First, as quoted, *Gauthier*'s ratio approach is not expressly confined to situations in which the negligence of the judgment debtor exceeds that of the judgment creditor. Second, the ratio approach is not obviously inconsistent with the language Taylor relies upon in art. 2324 B. The Louisiana legislature there emphasized only that a judgment debtor could not be required to pay more than his "degree of liability" to a more negligent judgment creditor. The legislature did not confine a judgment debtor's

liability expressly to its virile share of negligence. Whenever the ratio approach is applied to a case where the plaintiff's negligence was greater than that of the non-immune defendant, the non-immune defendant will never pay more than its share of damages based on the ratio between its and the plaintiff's negligence. This amount will never be more than 507 of the total damages. Thus, we do not find the ratio approach to be inconsistent with the statutory language concerning a lesser negligent defendant.

Our conclusion that the *Gauthier* ratio approach governs this case requires an amendment of the judgment. The district court did not use the ratio approach and held Taylor responsible only for its virile share, 107 of the damage award. Because the jury found Prestenbach 157 negligent, the ratio of fault between Prestenbach and Taylor is 3:2, hence Taylor's relative allocation of damages according to the ratio approach would be 407. On remand, the judgment against Taylor should be amended to reflect 407 of the damage award.

## II. THE JURY'S APPORTIONMENT OF FAULT

Although the preceding discussion embodies an assumption that Texas Eastern's negligence was appropriately apportioned by the jury, the assumption bears further analysis. Taylor contended that Texas Eastern must share in the attribution of negligence that caused Prestenbach's accident based on five theories: (1) failure to follow safe operating procedures; (2) overworking the crew, in particular, Wayne Prestenbach; (3) failure to maintain adequate plant drawings; (4) failure to remedy known safety problems; and (5) failure properly to supervise Prestenbach. The Prestenbachs and Texas Eastern vigorously disputed the evidence of such negligence, but the jury allocated 757 negligence against Texas Eastern. The question now is whether there was adequate evidence in the record to support this allocation.

We defer heavily, of course to the wisdom of the jury verdict. Under this standard, when all the evidence is viewed in the light most favorable to the verdict, this court may only reverse if the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at any contrary conclusion." *Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). At most, two of Taylor's negligence theories were inadequately supported

by the evidence. Witnesses differed on whether Texas Eastern maintained accurate electrical drawings at the Pointe-Au-Chein plant, but the accuracy of these drawings was not connected to Prestenbach's accident. He never looked at the drawings before attempting to "ground the K-2 capacitor." Additionally, Taylor's contention that Texas Eastern failed to remedy known safety problems suffers from its vagueness. What these safety problems were was not elaborated upon during the trial.

Taylor's other three theories, however, reflect genuine factual disputes.[2] Although Prestenbach denied being overworked during the course of the project, he had been working 12 hours a day, seven days a week and took only a half day off just before the accident. The jury could have decided he became careless through fatigue. Also, Texas Eastern had no rule requiring its workers to wear cotton clothing around electrical equipment. This rule, related to adequate safety procedures, would not have prevented Prestenbach's accident but it could have lessened his injuries considerably. The manmade fiber shirt he was wearing melted on his skin and on the hands of Dick Armstrong, who tried to assist him after the blast. Finally, Prestenbach's supervisor Dick Armstrong helped both to make Prestenbach's case against Taylor and to lose it by testifying that he had heard the instruction to Prestenbach to "ground the K-2 capacitor." The evidence strongly suggested, despite his denials, that Armstrong may have known there was no K-2 capacitor. In that case, the jury could have concluded that Armstrong had the power and duty to prevent Prestenbach from even attempting to engage in the fateful maneuver. Other possible sources of inadequate supervision of Prestenbach exist in the evidence. This court cannot plumb the depths of the jury's understanding of the facts, but we are unable to say that a rational jury could not have found Texas Eastern 757 negligent.

## III. CONCLUSION

---

[2]This court recently held, reversing a number of our earlier cases, that a jury verdict may be sustained even though not all the theories on which it was submitted had sufficient evidentiary support. *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 126 (5th Cir.), opinion on reh., 977 F.2d 161 (5th Cir.1992). *Walther* purported to be applying the Supreme Court's decision in *Griffin v. United States,* --- U.S. ----, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), which the Fifth Circuit believed overruled cases such as *Neubauer v. City of McAllen,* 766 F.2d 1567, 1575 (5th Cir.1985). Although its reasoning may be questioned, *Walther* appears authoritative in our court at this time.

The other issues raised by appellants—concerning the amount of damages, the possibility of a compromise verdict, jury instruction errors and Mrs. Prestenbach's *Lejeune* claim—have been carefully reviewed and rejected. No further discussion of those issues is necessary.

For the reasons stated, the court affirms the verdict in favor of appellants as modified to yield 407 of the damages awarded against Taylor, in accordance with our discussion.

AFFIRMED as Modified.