753 So.2d 286 (1999)
Leonard JOHNSON
v.
ROGERS & PHILLIPS, INC.
No. 99-CA-0116.
Court of Appeal of Louisiana, Fourth Circuit.
July 21, 1999.
Opinion Granting Rehearing December 15, 1999.
*288 James P. Lambert, Curtis & Lambert, Lafayette, Louisiana and Alfred V. Pavy Boudreau, Pavy & Boudreau, Opelousas, Counsel for Plaintiff/Appellee.
Sidney W. Degan III, James A. Rowell, Degan, Blanchard & Nash, New Orleans, Louisiana, Counsel for Defendant/Appellant Rogers & Phillips, Inc.
David J. Bourgeois, Metairie, Louisiana, Counsel for Intervenor/Appellee.
Court composed of Judge WILLIAM H. BYRNES III, Judge MOON LANDRIEU, Judge MICHAEL E. KIRBY.
KIRBY, Judge.

STATEMENT OF THE CASE
Plaintiff, Leonard Johnson, brought suit against defendant Rogers & Phillips, Inc., alleging that he had suffered injuries on its site while working for his employer, T.K. Stanley, Inc.[1] Rogers & Phillips filed a motion for summary judgment, arguing that Johnson was, at the time of the accident, Rogers & Phillips' borrowed employee, and as such should only be eligible for workman's compensation benefits.
Summary judgment was denied; after a trial on the merits, Johnson was initially awarded $37,500.00 in damages. This judgment would eventually be modified three times; the first two modifications were largely clerical in nature and do not concern us here. However, the third modification arose when it was revealed that the trial judge had mistakenly understood that Johnson's damages could not exceed the sum of $50,000.00. Johnson moved for a new trial just on the issue of damages, and this motion was granted.[2] After this, the fourth and final judgment was rendered, *289 awarding Johnson damages of $163,705.19.[3] This amount was reduced by 25% to $122,778.30, as comparative fault was attributed to Johnson. From this judgment, both Johnson and Rogers & Phillips appeal.

FACTS
Leonard Johnson was, in April 1994, employed as a truck driver by T.K. Stanley, Inc.; on the third of that month, Johnson, accompanied by fellow driver John Alleman, made a delivery of pipeline pipe to defendant Rogers & Phillips, Inc. Upon their arrival at Rogers & Phillips, Johnson and Alleman were told that no personnel were available to unload the pipe; a Rogers & Phillips foreman requested their assistance in the unloading of the truck.
A Rogers & Phillips foreman oversaw the unloading, which involved the use of a cherry picker crane. Johnson's role was to stand atop the load of pipe at the back of the flatbed trailer and hook the crane's sling onto the end of the pipe. At one point, after one of the pipes was being lifted, the pipe spun around, knocking Johnson approximately fifteen feet to the ground. Johnson rested briefly, then returned to the flatbed to continue helping with the unloading. At some point, Johnson had to cross to the opposite side of the flatbed; as he was doing so, the crane operator began lifting pipe. The pipe struck Johnson, who fell again, this time approximately eight to ten feet. Soon after this, it became apparent that Johnson had suffered injuries to his elbow and back. To seek recompense for these injuries, he instituted the present suit.

DEFENDANT'S FIRST ASSIGNMENT OF ERROR
In its first assignment of error, Rogers & Phillips asserts that the trial court erred in denying its motion for summary judgment on the borrowed employee issue.
Summary judgment is properly granted only if the pleadings and evidence show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P.Art. 966 C. Article 966 has recently been amended; however, the burden of proof remains with the mover to show that no genuine issue of material fact exists. See Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate.
If a plaintiff is determined to be a borrowed employee, he is barred from bringing a tort action against the borrowing employer; his sole remedy then lies in worker's compensation. Carter v. Chevron Chemical Co., 593 So.2d 942 (La.App. 4 Cir.), writ denied, 596 So.2d 211 (La.1992). If Rogers & Phillips had demonstrated, as a matter of law, that Johnson was a borrowed employee, then Johnson's tort suit should not have been allowed to proceed.
In order to determine whether a worker is the borrowed employee of another, the Ruiz factors must be considered. The necessary questions to be asked are:
1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
2) Whose work is being performed?
3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
4) Did the employee acquiesce in the new work situation?
5) Did the original employer terminate his relationship with the employee?

*290 6) Who furnished the tools and place for performance?
7) Was the new employment over a considerable length of time?
8) Who had the right to discharge the employee?
9) Who had the obligation to pay the employee?
Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969).
Rogers & Phillips argues that the factual evidence before the trial court at the time of the motion for summary judgment compelled a finding that plaintiff was the borrowed employee of Rogers & Phillips. This argument is followed by a detailed listing of facts as they apply to each Ruiz factor.
1) Who had control over the work? In this situation, it is clear that Rogers & Phillips had primary control over the work being performed; its foreman directed and supervised the unloading of the pipe. In fact, Rogers & Phillips had the exclusive obligation to unload the trucks. Plaintiff's involvement in this operation was fortuitous and came about only because Rogers & Phillips was not properly staffed for one job. Rogers & Phillips also correctly notes that the `control' factor is often considered central to determining borrowed servant status. Conner v. American Marine Corp., 96-2175 (La.App. 4 Cir. 11/17/96), 684 So.2d 550. However, no single factor is ever considered determinative. Walters v. Metropolitan Erection Co., 94-0162, 94-0475 (La.App. 4 Cir. 10/27/94), 644 So.2d 1143.
2) Whose work was being performed? Rogers & Phillips argues that the evidence before the court was conclusive on this issue, pointing out that T.K. Stanley trucks were ordinarily unloaded by the party to whom the cargo was being delivered. However, defendant notes that T.K. Stanley drivers did, at times, assist in unloading their trucks, suggesting that this action might be considered one of the duties of their employment. The trial court could well have concluded that further facts were needed before this factor could be properly evaluated.
3) Was there an agreement or understanding between the original and the borrowing employer? Rogers and Phillips concedes that there was no formal contract or agreement between T.K. Stanley and Rogers & Phillips on the question of Johnson's helping unload his truck, nor did they offer evidence to suggest that any informal agreement was in place. A formal agreement between the two employers is not always necessary, but the term "borrowed" connotes some type of agreement or meeting of the minds between the borrower and lender. Hall v. Equitable Shipyard, Inc., et al, 95-1754 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 546.
4) Did the employee acquiesce in the new work situation? Rogers and Phillips argue that the undisputed evidence was that Johnson did agree to help with the unloading. As the matter stood before the trial court at the time of the motion for summary judgment, this appears to have been correct.
5) Did the original employer terminate its relationship with the employee? Rogers & Phillips admits that T.K. Stanley did not terminate its employment relationship with Johnson. However, it argues that the Rogers & Phillips foreman exercised total control over Johnson, and claim that this is sufficient to satisfy this factor. They attempt to support this claim by referring to Ledet v. Quality Shipyards, 615 So.2d 990 (La.App. 1 Cir.1993), in which the court held that, in considering whether the original employer terminated its relationship with the employee, the trier of fact should focus on the lending employer's relationship with the employee while the borrowing occurs. In Ledet, the original employer had essentially relinquished control during the job performance in question and that situation had been in place for over a year. The holding in Ledet does not easily lend itself to the *291 finding that the trucking company here had actually relinquished control over its driver simply because that driver had been impressed into service by its customer, and was not personally monitored and directed by the trucking company throughout a single day. See Richard v. Teague, 92-17 (La.App. 3 Cir 5/4/94), 636 So.2d 1160. As T.K. Stanley had sent Johnson on this particular delivery, rightly considering it part of his employment with them, and apparently without the knowledge that Johnson would be asked to unload the pipe, the trial court could have concluded that T.K. Stanley did not, in fact, terminate its relationship with Johnson.
6) Who furnished the tools and place of performance? On this question, Rogers & Phillips is correct in its assertion that the job site and equipment involved belonged to Rogers & Phillips.
7) Was the new employment over a considerable length of time? Rogers & Phillips concedes that the unloading of the truck lasted less than a day. While employment periods as brief as one day have been held sufficient to support a finding of borrowed employee status, these have been in cases where other Ruiz factors strongly supported that finding. See Richard, supra; Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615 (5th Cir. 1986).
8) Who had the right to discharge the employee? T.K. Stanley had the exclusive right to terminate Johnson's employment as a truck driver; however, Rogers & Phillips had the exclusive right to terminate him from the unloading operation. Rogers & Phillips points out that having the power to terminate an employee's services at the job site has been found sufficient to satisfy this factor. Ledet, supra. It strains credulity, however, to suggest that Rogers & Phillips could make plaintiff its employee simply because it could discharge him from work he was doing without his payroll employer's knowledge as an accommodation to the customer. In order to reach that finding, however, the trial court would have required more information than that available at the time for the motion for summary judgment.
9) Who had the obligation to pay the employee? T.K. Stanley paid Johnson; Rogers & Phillips did not have anything to do with his compensation.
Some factors do point strongly towards finding Johnson a borrowed employee; but even by Rogers & Phillips's own reckoning, others do not. Based on the evidence available at the time of the motion for summary judgment, the Ruiz factors were fairly evenly split, not lending themselves to one conclusion or another. Furthermore, all the Ruiz factors are extremely fact-sensitive; given this situation, the trial court's decision to deny the motion for summary judgment was correct. Rogers & Phillips failed to meet its burden of proving that no material facts remained in dispute, and was not entitled to summary judgment as a matter of law.[4] This assignment of error is therefore without merit.

PLAINTIFF'S FIRST ASSIGNMENT OF ERROR
In his first assignment of error, Johnson argues that the trial court erred in assigning him comparative fault.
Johnson argues that no fault should have been apportioned to him; he first addresses the question of his second fall. Specifically, Johnson refers to the trial judge's language in the reasons for judgment, which states that "when the second load of larger pipe was being raised [Johnson] attempted to step over it. In doing so *292 his pants became caught in the cherry picker sling causing him once again to fall to the ground." Johnson argues that no evidence before the trial judge suggested that Johnson attempted to step over the pipe after the pipe was being lifted.
Regarding the actual scene of Johnson's accident, the trial judge had before him Johnson's own trial testimony and the deposition testimony of Marvin Shifflet and Michael Newbury, two Rogers & Phillips employees who were assisting in the unloading that day. Johnson correctly notes that neither employee specifically testifies that the pipe was in the process of being lifted at the moment of his second fall. However, both testified that Johnson was attempting to cross over the pipes when he became entangled in them, and that his efforts to extricate himself led to his fall. Also, the trial judge did not actually state that a lift was in progress at the very moment of Johnson's second fall; his words could as easily refer to Johnson's attempt to cross during the overall process of the pipe lifting. Furthermore, as the trial judge pointed out in his reasons for judgment, the first fall served as notice that the unloading of the pipe was not proceeding smoothly or safely. Despite having already taken one fall from the truck, Johnson willingly returned to continue. In so doing, he incurred a certain amount of fault. The evidence before us does not support a finding that the trial court was in error on this issue.
However, Johnson goes on to address the trial judge's findings on the first fall. The trial judge found no fault on Johnson's part individually, but attributed 25% fault to John Alleman, the other T.K. Stanley driver. The trial judge stated that this "allows for plaintiff to recover 75% of his injuries as a result of this fall."
The trial judge was correct to fully quantify the fault, though Alleman was not a party to the litigation. Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180. However, Johnson points out that his coworker's fault should not be imputed to him. The negligence of one person is not to be imputed to another in the absence of a legal obligation on the part of the latter to respond to the fault of the former. Bonner v. U.S. Fire Ins. Co., 494 So.2d 1311 (La. App. 2 Cir.1986), writ denied, 497 So.2d 1017. Alleman's negligence could, at most, be imputed to his employer, T.K. Stanley, but not to fellow employee Johnson; they were fellow employees at the time of the accident, not engaged in a joint venture which would have the power of rendering them answerable for each others' fault. See Laird v. State Farm Ins. Co., 290 So.2d 343 (La.App.), writ denied, 293 So.2d 184 (La.1974). The trial court did not take the step of imputing Alleman's negligence to T.K. Stanley; nor will this court, as it is unnecessary to quantify the fault of an employer in a tort case wherein the employer is immune from liability under the Workman's Compensation Law. Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496 (La.6/30/95), 657 So.2d 975.
As Alleman's 25% comparative fault in the first fall cannot be imputed to Johnson, and Johnson was found to bear only 25% comparative fault for the second of the two falls, reducing his overall recovery by 25% was error by the trial court. In his reasons for judgment, the trial judge refused to make a determination on exactly what damage had been done to Johnson by each fall; the two accidents were so close together in time, and so similar, as to make such a differentiation uncertain at best. The trial judge discussed the difficulties in determining whether the fall for which Johnson was partly responsible was more or less damaging than the fall for which he was not responsible; in holding Johnson to be 25% at fault overall, he essentially held Johnson responsible for 12.5% of the total damages in the first fall, and 12.5% of the total damages in the second fall. As we find Johnson not at fault in the first fall, this court will halve the percentage of comparative *293 fault attributed to Johnson to 12.5%, and amend the judgment accordingly.

PLAINTIFF'S AND DEFENDANT'S SECOND ASSIGNMENTS OF ERROR
Both Rogers & Phillips and Johnson assert that the trial court's assessment of damages is in error; Rogers & Phillips argues that the damage amount is unsupported by the evidence and excessive as a matter of law, while Johnson claims the trial court abused its discretion in awarding insufficient damages.
Johnson suffered injuries to his elbow, shoulder, neck and back in his two falls. He underwent chiropractic treatment for his neck and shoulder pain, and saw an orthopedic surgeon for treatment of his elbow and back. This physician, Dr. Cobb, performed surgery on Johnson's elbow in September of 1995; he further recommended back surgery for Johnson that had not, at time of trial, been performed. However, Johnson indicated that he strongly wished to have that surgery. Apparently Johnson suffered shoulder and neck pain for seven to eight months; his back pain, caused by an impingement of a nerve in the spine, was still frequent and severe at the time of trial. In addition to his elbow surgery, Johnson had undergone numerous tests, including CAT scans, nerve conduction tests, and a myelogram. He also underwent physical therapy to alleviate pain.
The trial court's judgment on remand awards Johnson $23,705.19 in past medical expenses, $45,000 for pain and suffering, $35,000 for future medicals and disability, $30,000 for lost wages, and $30,000 for lost earning capacity. The award for past medical expenses is not disputed by either side, but all other awards are contested by one or both of the parties.

Lost wages
Rogers & Phillips first notes that, in the original judgment, Johnson was only awarded $10,000 in lost wages; they argue that Johnson lost a finite amount of wages as a result of the accident, and thus this award amount should not have been trebled in the final judgment. Rogers & Phillips goes so far as to argue that only bias on the part of the trial court could explain the increase.
Johnson points out that another potential explanation  that the trial judge was attempting to work within the $50,000 limit that supposedly capped Johnson's damages  immediately suggests itself. Johnson was injured in April of 1995, and was not released to work until May of 1997. Although he was able to perform some light duty work for T.K. Stanley, his earnings were over $1000 a month lower than those of the average T.K. Stanley driver. Given that Johnson earned money at this reduced rate for the greater part of twenty-five months, and did not earn any money at all some of those months, the $30,000 award accurately reflects Johnson's losses. This assignment of error is without merit.

Lost earning capacity
Johnson argues that the award of $30,000 in lost earning capacity is grossly inadequate and represents a clear abuse of the trial court's discretion. He points out that two of his physicians, Dr. Cook and Dr. Mayer, agreed that he could not return to work as a truck driver, nor perform heavy labor.
However, both doctors agreed that Johnson was capable of performing light to medium work on a full-time basis. Furthermore, Rogers & Phillips vocation expert opined that Johnson could possibly return to work as a truck driver. On balance, the trial court appears to have given more credence to the testimony of Johnson's physicians; however, even those physicians indicated that Johnson would have some earning capacity in the future.
Johnson's earnings at the time of the accident are relevant, but are not necessarily the only mode of estimating his future earning capacity. Hoskin v. Plaquemines Parish Government, 97-0061 (La. *294 App. 4 Cir. 12/1/97), 703 So.2d 207. As Johnson is considered by all the physicians involved in this case to have future earning potential, not necessarily defined by the exact same tasks and salary as he has received in the past year, the trial court's estimation of $30,000 in lost future earnings is not in error.

Past pain and suffering / future medical expenses and disability
Johnson was awarded $45,000 for pain and suffering and $35,000 for future medicals and disability, an amount which Rogers & Phillips believes to be unsupported by, and contrary to, the evidence. Rogers & Phillips bases this assertion on the fact that Johnson's post-remand memorandum on the issue of damages referenced cases dealing with plaintiffs who had suffered herniated discs, resulting in surgery. As Rogers & Phillips points out, plaintiff did not suffer from a herniated disc, and only one physician, Dr. Cook, has opined that Johnson will require surgery in the future. Rogers & Phillips likens Johnson's injury to a pinched nerve, and refers this court to several cases in which far lower damage amounts were awarded for that injury. See Gonzalez v. Allstate Insurance Co., 615 So.2d 446 (La.App. 4 Cir.1993), writ denied, 620 So.2d 849 (La. 1993). Rogers & Phillips assert that this damage award could only mean that the trial judge found Johnson to have suffered a herniated disc, a finding contrary to the evidence.
Johnson points out that the trial court did not make such a finding, and that the finding is not necessary in order to award the damages given in this case. Johnson resists the characterization of his injury as minor; his treating physician, Dr. Cook, testified that the nerve impingement suffered by Johnson is not dissimilar to that caused by a herniated disc; in this case, the causative agent is bone, rather than protruding disc material. The surgical treatment advised by Dr. Cook involves removing part of the vertebra to eliminate the bony material impinging the root; in this, it is again not identical to, but somewhat like, that performed on patients with herniated discs. Johnson therefore feels that the damage award, not unlike those awarded to plaintiffs with herniated discs, is at the very least appropriate; he goes so far as to argue that the award should be considered inadequate, and refers our attention to several cases in which the general damage awards outstripped his own. See Buras v. United Gas Pipeline Co., 598 So.2d 397 (La.App. 4 Cir.1992), Runnels v. Esteves, 550 So.2d 1225 (La.App. 4 Cir. 1989,) writ denied, 558 So.2d 1126 (La. 1990). Based upon our review of the evidence and the reasons for judgment, we find that the trial court did not in fact determine Johnson to have suffered from a herniated disc, which would have represented clear error. Instead, the trial court appears to have merely analogized Johnson's injury to herniated disc injury, which appears from the evidence to be a reasonable inference
Rogers & Phillips notes that physicians other than Dr. Cook did not agree that Johnson will require surgery. Although this is true, it does not serve as a demonstration of error on the part of the trial court. The opinions of a plaintiff's treating physician are generally entitled to greater weight. "The reason for this preference is that the treating physician is more likely to know the patient's symptoms and complaints due to repeated examinations and observations of the injured person." Riley v. Reliance Ins. Co, 97-0445 (La.App. 4 Cir. 11/19/97), 703 So.2d 158, 167. The trial court accepted Dr. Cobb's diagnosis, and despite the differing opinions of other physicians, we cannot say the trial court's finding represents clear error. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State Dept. of Transportation & Development, 617 So.2d 880, 883 (La.1993). See also Boudoin v. Nicholson, Baehr, Calhoun & *295 Lanasa, 96-0363 (La.App. 4 Cir. 7/30/97), 698 So.2d 469.
Dr. Cobb testified that the cost of the proposed surgery would be in the neighborhood of $12,000 to $15,000; post-operative physical therapy is expected to cost approximately $3,000. A period of disability may be expected to follow the procedure. These amounts are estimations, but are approximate enough to support the award made as reasonable for future medicals and disability. Brown v. Southern Baptist Hospital, 96-1990 (La.App. 4 Cir. 3/11/98), 715 So.2d 423.
Regarding the pain and suffering award, neither Rogers & Phillips' contention of extreme overestimation nor Johnson's assertion of extreme underestimation holds much weight. The trial court has awarded an amount between the lower awards for pinched nerves and the higher awards for herniated disc injury; none of the evidence adduced by either side demonstrates that the trial court erred in so doing. A mere reference to prior awards with generally similar injuries does not and should not determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case; the appellate court's first inquiry is whether or not the award for the particular injuries under the particular circumstances of the case at hand represent a clear abuse of the much discretion of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260. Given that the injuries to Johnson's arm and back were serious and debilitating, yet not devastating in nature, the trial court's awards are reasonable. Neither party has presented evidence that would show the trier of fact's abuse of discretion, and as such, all their analogies to other cases remain irrelevant. The discretion vested in the trier of fact is great, and an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case; it is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id. at 1261. Neither party here has shown that the awards given are beyond those which a reasonable trier of fact could assess. These assignments of error are therefore without merit.
In accordance with the reasons given above, the judgment of the trial court, refusing summary judgment to Rogers & Phillips and ultimately awarding $23,705.19 in past medical expenses, $45,000 in pain and suffering, $35,000 in future medicals and disability, $30,000 in lost earning capacity, and $30,000 in lost wages to Johnson, for a total damage award of $163,705.19, plus legal interest from the date of judicial demand and all costs is affirmed. We amend that judgment to reduce Johnson's comparative fault from 25% to 12.5%, and assign 12.5% of the fault to his coworker; however, Rogers & Phillips remains cast in judgment for 75% of the fault, and is bound to pay $122,778.89 to Johnson.
AMENDED; AS AMENDED AFFIRMED.

ON APPLICATION FOR REHEARING
KIRBY, J.
Plaintiff, Leonard Johnson, applies for a rehearing asserting that in our original opinion we failed to disregard the proportion of fault assessed to Plaintiffs statutorily immune co-employee and real-lot fault of all other blameworthy parties, in accord with Gauthier v. O'Brien, 618 So.2d 825 (La.1993) and Guidry v. Frank Guidry Oil Co., 579 So.2d 947 (La.1991). We find merit in the assignment of error and grant the rehearing because this was the applicable law at the time of the accident, April of 1994.
*296 The trial court's judgment did not invoke Gauthier, Supra because it assigned no fault to plaintiffs statutorily immune co-employee. However, our opinion of July 21, 1999 amended the trial court's judgment and assigned 12.5% fault to the statutorily immune co-employee, thus triggering the application of Gauthier. Our opinion applied the current substantive law, i.e. La.C.C. Art. 2324(B), as opposed to the law in effect at the time of Mr. Johnson's accident.
Louisiana Civil Code Article 2324(B), which revokes solidary liability, was held to be substantive and thus have only prospective application. Aucoin v. State Through the Dept. of Transportation and Development, 97-1967 (La.4/24/98) 712 So.2d 62. Since the current La. C.C. Art. 2324(B) does not apply to torts that occurred in 1994, we look to Gauthier, the 1993 case which holds that the ratio approach applies. The ratio approach requires that the fault attributable to the immune employer be reallocated among all other blameworthy parties in proportion to their fault[1]
In this case the assessment of Plaintiffs fault was 12.5%, and that of Rogers & Phillips was 75%, the 12.5% fault of Plaintiff's co-employee, John Alleman should be reallotted at a ratio of 12.5 to 75. See Guidry v. Frank Guidry Oil Co., 579 So.2d 947 (La.1991). Thus, Plaintiff's fault is increased to 14.29%, and Rogers & Phillips' fault increases to 85.71%.
Therefore the judgment of the Court is amended to provide that Rogers & Phillips is cast in judgment for 85.71% of the fault and is bound to pay $140,311.72 to Plaintiff. Except as modified herein we abide by the views expressed in our original opinion.
AMENDED; AND AS AMENDED AFFIRMED.
NOTES
[1] T.K. Stanley's worker's compensation carrier, Lumberman's Underwriting Alliance, intervened to recover worker's compensation benefits paid as a result of the accident.
[2] This was submitted on brief only.
[3] It should be noted that the trial court only issued written Reasons for Judgment for the original judgment.
[4] We note that the trial did in fact reveal relevant information; T.K. Stanley representative Tony Cook testified that unloading the trucks was part of Johnson's job, when the recipient had insufficient personnel to do so. This casts doubt as to whether the unloading of the truck was fully Rogers & Phillips's work, or also T.K. Stanley's; it further calls into question whether or not Johnson willingly acquiesced to a new duty for a new employer, or instead performed a mandatory duty for his usual employer.
[1] Gauthier v. O'Brien, 618 So.2d 825, 833 (La.1993).