793 So.2d 410 (2001)
Michael VAUGHN
v.
BFI WASTE SYSTEMS OF NORTH AMERICA, INC.
No. 2001-C-1105.
Court of Appeal of Louisiana, Fourth Circuit.
July 25, 2001.
*411 Dennis J. Phayer, Charles W. Farr, Burglass & Tankersley, L.L.C., Metairie, LA, Counsel for Relator.
Christopher J. Bruno, Bruno & Bruno, New Orleans, LA, Counsel for Respondent.
Court composed of Chief Judge WILLIAM H. BYRNES III, MIRIAM G. WALTZER and JAMES F. McKAY III, Judges.
WALTZER, Judge.
Relator challenges the trial court's decision denying defendant's motion for summary judgment. We grant the application for supervisory writs, deny relief and affirm the ruling of the trial court.

STATEMENT OF THE CASE
Michael Vaughn filed suit against BFI Waste Systems of North America, Inc., the Relator, for injuries he sustained when he fell from the back of one of Relator's trucks. Relator filed a motion for summary judgment on the basis that Vaughn was limited to a claim for worker's compensation because he was a borrowed employee of Relator. The trial court denied the motion for summary judgment.

STATEMENT OF THE FACTS
Plaintiff alleged that on the day of the accident, 21 July 1998, he was an employee of Quixx Temporary Services (Quixx) and was working on one of Relator's garbage trucks when the truck stopped suddenly, causing him to fall and fracture his wrist. He further alleged that there was no written agreement between Quixx and Relator; thus, Relator was not entitled to immunity from suit in tort under LSA-R.S. 23:1061.
In its motion for summary judgment, Relator alleged that Vaughn was a direct employee of Task Force Temporary Services, Inc. (Task Force) with whom Relator had contracted for the provision of temporary workers. Relator further alleged that once Vaughn was assigned to work as a hopper for Relator, Task Force exercised no control over his work. Relator admitted that Vaughn was paid directly by Task Force, but his wages were determined by the time he worked for Relator.
In support of its motion for summary judgment, Relator submitted a copy of the contract between it and Task Force; the affidavit of Caroll Caro, of Task Force; and the affidavit of Robert Terrell, the operations manager for Relator. Caro stated in his affidavit that in July 1998, pursuant to a written contract, Task Force provided temporary workers to Relator and that one of those workers was Vaughn. He further stated that, pursuant to the contract, it provided worker's compensation insurance in favor of temporary workers and that the cost of the insurance was passed on to Relator. Caro also stated that Task Force was not in the business of garbage collection, that Task Force exercised no control or supervision over Vaughn's work with Relator, that it did not provide him with any tools or equipment for the performance of his work, and that Relator had the discretion not to allow Vaughn to work on its trucks. Terrell *412 stated in his affidavit that Relator's routine, customary, ordinary, and usual business activity involved the collection and disposal of garbage; that Relator customarily used its own employees to perform such work; that during times of exceptionally heavy demand and workloads, Relator would contract with temporary manpower services to provide temporary workers; that one of those temporary manpower services it used in July 1998 was Task Force; and that in July 1998 Task Force supplied temporary workers to Relator who used those workers to conduct its business of garbage collection and disposal. Terrell further stated that the work performed by the Task Force's personnel was part of Relator's routine, customary, ordinary, and usual business activity; that Relator controlled and supervised the work performed by Task Force's personnel; that Relator owned and operated the trucks on which Task Force's personnel worked; that Relator determined the route its trucks took in the course of collecting garbage; that if Relator were not satisfied with the work performed by a particular Task Force employee, Relator had the discretion not to use that worker's services again; and that Relator paid Task Force at a rate based on the hours that Task Force's personnel worked for Relator.
Vaughn opposed the motion for summary judgment by asserting that he was an employee of Quixx which did not have a written contract with Relator and thus, he was neither a borrowed servant nor statutory employee of Relator. He pointed to the fact that Quixx paid his salary and worker's compensation benefits. He also asserted that Relator failed to show any relationship between Quixx and the work that Relator was performing on the date of his accident. Vaughn submitted his deposition in which he stated that he had never heard of Task Force and that Quixx was the only name he knew. He argued that Relator failed to show any relationship between Quixx and the work that Relator was performing on the day of his accident.

DISCUSSION
Relator complains that the trial court erred in denying its motion for summary judgment because there is no genuine issue of material fact that Vaughn was its borrowed employee thereby barring his tort claim for injuries he sustained while in the course and scope of his employment with Relator. Relator asserts that Vaughn has failed to submit any evidence that contradicts the evidence it submitted in support of its motion for summary judgment.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA C.C.P. art. 966(B). LSA-C.C.P. art. 966(C)(2) provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
*413 Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual nature mandates the granting of the motion for summary judgment. Babin v. Winn-Dixie Louisiana, Inc., XXXX-XXXX (La.6/30/00), 764 So.2d 37. Appellate courts review summary judgments de novo and use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Haney v. Delta Petroleum Co., Inc., 99-0170 (La. App. 4 Cir. 10/9/99), 748 So.2d 36, writ denied 99-3177 (La.1/14/00), 753 So.2d 217.
Relator argues that Vaughn confused the issues of a borrowing employer and a statutory employer in opposing the motion for summary judgment. Borrowed employees are dealt with in LSAR.S. 23:1031(C), which provides:
In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method for sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed. The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.
Statutory employers are dealt with in LSA-R.S. 23:1061(A), which provides:
A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

*414 (2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.
(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
Vaughn apparently focused on the statutory employer issue, as opposed to the borrowed employee issue, because of the lack of a written contract between Relator and Quixx, although there is a written contract between Relator and Task Force. Because there was no written contract between Quixx, which was the only temporary employment agency that Vaughn knew, and Relator, Vaughn should not be deemed a statutory employee of Relator under LSA-R.S. 23:1061 even though he was clearly engaged in work that was part of the trade, business, and occupation of Relator. However, just because Relator did not have a statutory employer relationship with Vaughn, it does not preclude Vaughn's being a borrowed employee of Relator.
In Johnson v. Rogers & Phillips, Inc., 99-0116 (La.App. 4 Cir. 7/21/99), 753 So.2d 286, this Court, citing Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969), set forth the following nine factors to be used in determining whether a worker was a borrowed employee: (1) who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation; (2) whose work is being performed; (3) was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer; (4) did the employee acquiesce in the new work situation; (5) did the original employer terminate his relationship with the employee; (6) who furnished the tools and place for performance; (7) was the new employment over a considerable length of time; (8) who had the right to discharge the employee; and (9) who had the obligation to pay the employee.
With regard to the first factor, Relator asserts, based on the two affidavits it submitted, that it had control over Vaughn and the work he was performing at the time he was injured. Vaughn was not asked in his deposition about who supervised him at the time of the accident. However, he submitted no evidence to contradict the statements in the affidavits. As to whose work was being performed at the time of the accident, Vaughn performed Relator's work, namely that of collecting and disposing of trash. The third factor, whether there was a meeting of the minds between the original and the borrowing employers, is not fully resolved. Relator repeatedly refers to Vaughn as being a temporary worker it hired through Task Force, but Vaughn stated in his deposition that he had never heard of Task *415 Force, but instead worked for Quixx. Neither of the affidavits submitted by Relator sets out the relationship between Quixx and Task Force, and Relator does not clear it up in its writ application.
The fourth factor is whether Vaughn acquiesced in the new work situation, and there is nothing in his deposition testimony to indicate that he unwillingly went to work on Relator's garbage truck. Vaughn indicated that he had previously worked as a hopper for other companies prior to the accident. The fifth factor, whether Task Force or Quixx, terminated its relationship with Vaughn, is not in Relator's favor. Relator admits that Vaughn received his paychecks from the temporary employment agency, not from Relator. Relator appears to have provided the tools and equipment for Vaughn in that the truck on which he worked belonged to Relator; thus, the sixth factor is in Relator's favor. The seventh factor, whether the employment was over a considerable length of time, should not necessarily be determinative because Vaughn was injured on his first day on the job. Relator asserts that it had the right to discharge Vaughn, the eighth factor, in that it could tell Task Force that it did not want Vaughn if it found his work unsatisfactory. The ninth factor, who had the obligation to pay the employee, is not in Relator's favor in that Vaughn received his pay from the temporary agency; but, it should be noted that Vaughn's pay was based on his work for relator.
It appears that the majority of the factors for determining whether a worker is a borrowed employee are in Relator's favor, especially Relator's right to control Vaughn's work, the work that he did was for Relator and not Quixx, and Relator's right to discharge Vaughn; but there is still the unresolved issue of which temporary employment agency contracted with Relator to provide workers. The affidavit of Caro, the operations manager for Task Force, is irrelevant if Vaughn was an employee of Quixx. Because there is no evidence as to the nature of the relationship between Quixx and Task Force, the trial court did not err in denying the motion for summary judgment at this point in the litigation.
Accordingly, we grant the application for supervisory writs, deny relief and affirm the judgment of the trial court.
APPLICATION FOR SUPERVISORY WRITS GRANTED. RELIEF DENIED. JUDGMENT OF THE TRIAL COURT AFFIRMED.